# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 20-41136 |
| Jason Alan Bebeau, | |
| Debtor. | Chapter 7 |
| Mary R. Jensen, Acting United States Trustee, Plaintiff, | |
| v. | Adv. No. 21-04044 |
| Jason Alan Bebeau, Defendant. | |

## MEMORANDUM DECISION

At Minneapolis, Minnesota, December 5, 2022.

This chapter 7 case came before the Court on the Acting United States Trustee Mary R. Jensen's Motion to revoke Defendant-Debtor Jason Alan Bebeau's discharge under 11 U.S.C. § 727 (d)(1)-(2).[1]  [ECF No. 1.]  A trial was held on June 7-8, 2022.  Colin Kreuziger appeared on behalf of the Plaintiff, and Nathan M. Hansen appeared on behalf of Debtor.  At the conclusion of the trial, the Court invited the parties to file contemporaneous supplemental memoranda.  The parties timely complied.  [ECF Nos. 37 and 38.]  Thereafter the Court took the matter under advisement, and it is now ready for resolution.

This memorandum decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and this is a core proceeding.  For the reasons stated herein, Jason Alan Bebeau's discharge is **REVOKED**.

---

[1] All statutory references to the Bankruptcy Code are to the specified provisions within 11 U.S.C. §§ 101-1532.

1

# BACKGROUND

Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code in the District of Minnesota on April 23, 2020. [20-41136, ECF No 1.] He received his discharge on July 21, 2020, and the case was closed on August 5, 2020. On March 30, 2021, Plaintiff filed an application to reopen Debtor's bankruptcy case. On July 19, 2021, Plaintiff filed an adversary complaint under Fed. R. Bankr. P. 7001(4) seeking an order revoking Debtor's discharge under 11 U.S.C. §§ 727(d)(1)-(2). [20-04044, ECF No 1.]

Debtor has, or previously had, interests in multiple businesses in the building and property development industries. These include Odyssey Homes, Inc. (Odyssey), Everpine Land Holdings, LLC (Everpine Land), and Everpine Custom Homes, Inc. (Everpine Homes), and a later-acquired entity, Platinum Land, LLC (Platinum Land). [Stip. Facts; Ex. 47.] Debtor was the registered agent, President, and CEO of Odyssey. [Stip. Facts p. 5; Tr. I, at 111:4-11.][2] Odyssey owned multiple parcels of land in Isanti County, Minnesota; in September 2018, Odyssey entered into a development agreement with the City of Isanti for a residential real estate project called Legacy Pines. [Id.]

Debtor worked with his friend and "finance guy" Robert Machacek on multiple development projects including the Legacy Pines development. [Ex. 1, at 1-3; Tr. I, at 13; 113:17-18; 114:21-25.] Mr. Machacek has an interest in multiple financial entities and LLCs collectively referred to as "Alliant Ventures." [Tr. I, at 58:17-59:4.] Through these entities, Mr. Machacek provided funding for Debtor's businesses and to Debtor personally. [Tr. I at 59:25-60:7; 61:21-24.] Mr. Machacek did not require Debtor to fill out loan applications when providing loans to Debtor or his businesses. [Tr. I at 61:1-4.] Instead, Debtor would tell Mr. Machacek he needed a

---

[2] Trial transcripts are abbreviated as Tr. I and Tr. II; trial exhibits are abbreviated as Ex.

loan and Mr. Machacek would "pretty much" decide whether he was going to loan him the money. [Tr. I at 61:5-8.] Mr. Machacek continued to loan Debtor and his businesses money, including through Debtor's bankruptcy, even though none of Debtor's businesses turned a profit. [Tr. I at 61:17-62:4.]

In February 2019, Debtor organized both Everpine Land and Everpine Homes. [Tr. I 117-118.] After organizing the Everpine businesses, Odyssey transferred the real estate to be used for the Legacy Pines development to Everpine Land. No consideration was provided for this transfer. [Ex. 4; Tr. I at 122:8-21.]

In February 2020, prior to filing for bankruptcy, Debtor discussed his plans with his then-fiancé Mary Garaghty and Mr. Machacek. [Tr. I, at 20:12-24; 136:11-137:13;100:8-22.; 137:14-21.] The three of them met to discuss transferring the Legacy Pines Development project in an effort to conceal it from the Bankruptcy Court. [Tr. I, at 20:25-21:8; 21:11-15.] The plan was "to transfer [Legacy Pines] to [Garaghty], back date it six months, and then [she] would transfer it back over to [Machacek]." [Tr. I 21:18-22.] At this meeting Debtor signed a document transferring his interest in Everpine Land to Ms. Garaghty. [Ex. 11,13; Tr. I, at 23:8-24:18; 142:23-143:4.] Debtor did not receive any consideration for this transfer. [Ex. 11.] Ms. Garaghty credibly testified that this document was backdated to August 1, 2019. The transfer of this entity and the property was not listed in Debtors original or amended schedules. A third transfer was made by the trio when Debtor had Ms. Garaghty sign another document transferring Everpine Land to an entity called "Alliant Ventures VI, LLC," which was signed by Mr. Machacek as the CEO. [Ex. 12, Tr. I, at 24:19-25:25; 26:6-20.] According to Ms. Garaghty's credible testimony, this document was backdated to January 1, 2020; it showed that Everpine Land was indebted to Alliant Ventures VI in an unspecified amount. Supposedly this transfer resolved all claims between the

3

two businesses. [Ex. 12.] However, Mr. Machacek credibly testified that Everpine Land was not, nor had it ever been, indebted to Alliant. [Tr. I 64-65.] On March 4, 2020, Debtor closed the bank accounts for Odyssey and Everpine Land, and on March 20, 2020, he dissolved Odyssey. [Ex. 16; Tr. I, at 146:4-15; Ex. 18.]

Ms. Garaghty knew she signed papers at the meeting with Debtor and Mr. Machacek, but she did not know what she was signing, nor was she aware that she ever had an interest in Everpine Land. [Tr. I 23:4-24:23; 24:6-13; Ex. 11.] Ms. Garaghty also testified that the only company she knowingly had an interest in was Platinum Land LLC. [Ex. 34; Tr. I 27:18-28:9.] On July 28, 2020, one week after Debtor received his discharge, Ms. Garaghty transferred her interest in Platinum Land to Debtor. [Ex. 70,74.] The assignment recites that Platinum Land was indebted to Debtor "pursuant to a loan secured by a mortgage recorded against the company's real property" but there never was a loan between Platinum Land and Debtor. [Tr. I 39:6-17, 198:7-13; Ex. 74.] Debtor never listed a "loan" on his schedules, nor did he amend his schedules to include his interest in Platinum Land.

Debtor purchased properties via Platinum Land prior to the transfer without the knowledge or authority of Ms. Garaghty. [Tr. I 40-46.] These properties included two lots located on Nowthen Boulevard in Ramsey, Minnesota. [Ex 43,70.] Debtor continued to purchase properties through Platinum Land *after* he filed for bankruptcy relief. [Tr. I 45-46; Ex. 59,61-63,67,79.] Again, Debtor did not list any of the properties he purchased through Platinum Land, either before or after his Bankruptcy filing, on his Bankruptcy schedules.

On his schedules, Debtor indicated that he was unemployed. However, Debtor continued to work on developing the Nowthen properties until at least early 2021, and he continued to work on an additional property until at least September 2021. [Ex. 53-58; Tr. I, at 198:21-203:25; Ex.

62-66; Tr. I, at 206:8-210:14; Ex. 81-82; Tr. I, at 219:19-220:24.] Debtor testified that at the time of trial he was still working on properties that Everpine land had purchased. [Tr. I 162-63.] Additionally, Mr. Machacek credibly testified that he and Debtor were "just finishing up" work on the Legacy Pines project at the time of trial. [Tr. I 102-103.]

Although, Debtor closed the Odyssey and Everpine Land accounts on the same day he paid his bankruptcy attorney, he continuously used the Everpine Homes account throughout his bankruptcy up until trial. Debtor testified that he intentionally omitted Everpine Homes from his bankruptcy documents because it was "worth zero, that's why." [Tr. II, at 46:13-23.] However, that statement is false. Mr. Machacek signed multiple checks payable from Alliant Finance LLC to Everpine Homes which were deposited in the Everpine Homes account. [Ex. 63, 88, 89.] These checks totaled over $250,000.00, yet these transfers were not disclosed on his petitions. [Ex. 88, 90; Tr. II, at 38:19-23.]

Debtor used the Everpine Homes account to pay his personal bankruptcy attorney on March 4, 2020. [Ex. 89; Tr. II 40:22-41:7.] He also used the Everpine Homes account for daily personal expenses. Debtor did not keep any corporate records to account for his personal use of his corporate bank accounts. [Ex. 89; Tr. II, at 40:22-41:7.] He testified that he "comingled expenses and had it all taken care of … during taxes every year." [Tr. II 72:19-20.] And that "It was a mess when [he] did [his] taxes." [Tr. II 40:13.] Bottom line: Debtor did not disclose a bank account for Everpine Homes on his schedules or amended schedules. [ECF Nos. 1 and 9.]

Additionally, Debtor had access to another business account that he created with his former-friend and business partner, Chip Davids, after he filed for bankruptcy. Mr. Davids and Debtor had been involved in a development project called Penelope Properties. [Tr. II 7.] Mr. Davids and Debtor opened a bank account for Penelope Properties on July 31, 2020. [Ex. 98.28;

5

Tr. II 14-17.] Debtor had access to and was the sole user of this account, and Debtor did not disclose it to the trustee. [Id.] Mr. Davids credibly testified, and the bank statements showed, that Debtor began moving money back and forth between the Penelope and Everpine Homes accounts. [Id.] Mr. Davids also testified that he asked Debtor why he was moving money in and out of the Penelope account. [Tr. II 16.] Debtor told him "that when he was getting money, that he would have to bring it in and out of different bank accounts" and Debtor said he did this because he "needed it not to be traceable." [Tr. II 16.]

On June 23, 2020, Debtor filed an amended schedule B removing his interest in Everpine Land. [ECF No.9.] All told, Debtor failed to disclose the following assets:

- His interest in Everpine Homes;
- His interest in Platinum Land;
- Any development projects;
- Additional bank accounts; and
- His employment.

## DISCUSSION

The purpose of a discharge in bankruptcy is to "relieve an honest debtor from his financial burdens and to facilitate the debtor's unencumbered fresh start." In re Kasden, 209 B.R. 239, 241 (B.A.P. 8th Cir. 1997) (quotation omitted). If a debtor is not honest, the Bankruptcy Code provides mechanisms to either deny or to revoke a debtor's discharge. See 11 U.S.C. §§ 727(d). Revocation of a debtor's discharge is an "extraordinary remedy." Bowman v. Belt Valley Bank (In re Bowman), 173 B.R. 922, 924 (B.A.P. 9th Cir. 1994). Section 727 of the Bankruptcy Code is construed liberally in favor of the debtor with the burden of proof resting with the objecting party. In re Bieniek 417 B.R. 133, 136-37 (Bankr. Minn. 2009) (citation omitted).

### I. 11 U.S.C. § 727(d)(1)

Plaintiff first invoked revocation of Debtor's discharge pursuant to 11 U.S.C. § 727(d)(1), which states:

> On request of . . . the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge.

11 U.S.C. § 727(d)(1). The first element is met if the debtor "committed a fraud which would have barred his discharge had the fraud been known at the time of the discharge." O'Neal v. DePriest (In re DePriest), 414 B.R. 518, 521(Bankr. W.D. Mo. 2009). There is sufficient proof of fraud if the plaintiff can prove the elements that would support denial of discharge under § 727(a)(2)-(5). Davis v. Osborne (In re Osborne), 476 B.R. 284, 292 (Bankr. D. Kan. 2012). The plaintiff must also prove that she did not have knowledge of the fraud until after the discharge was granted. Fokkena v. Peterson (In re Peterson), 356 B.R. 468, 476 (Bankr. N.D. Iowa 2006). The party requesting a revocation of discharge bears the burden of proving each applicable element of § 727(d) by a preponderance of the evidence. In re Sendecky, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002). Here, the parties stipulated that the Trustee did not have knowledge of the alleged fraud prior to discharge, therefore the only issue is whether the debtor committed fraud.

### A. 11 U.S.C. § 727(a)(4)(A)

The Court may deny the discharge of a debtor if he "knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail the Trustee must prove "(1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." Kaler v. Charles (In re Charles), 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012) (quotation omitted).

To support denial of discharge, "the false statement must be material." Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (quotation omitted). "[T]he threshold to materiality is fairly low." In re Charles, 474 B.R. at 686. A statement is material "if it bears a relationship" to the debtor's "business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Id. (quotation omitted).

The debtor is required to verify the information in his bankruptcy schedules and petition under the penalty of perjury. Sullivan v. Bieniek (In re Bieniek), 417 B.R. 133, 138 (Bankr. D. Minn. 2009). The debtor's signature "has the force and effect of an oath." Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (8th Cir. B.A.P. 2000). "Statements made with reckless indifference to the truth are regarded as intentionally false," and "fraudulent intent may be established by circumstantial evidence." In re Charles, 474 B.R. at 684.

The Court finds that Debtor made the following materially false oaths on his bankruptcy schedules; therefore, revocation is appropriate.

Debtor disclosed his interest in Everpine Land on his Schedule B, but he stated that Everpine Land's assets consisted solely of a checking account worth $2,490.00. [ECF No 1.] This is false. Debtor had an interest in several assets connected with Everpine Land which were not disclosed on his schedules: the real estate connected to the Legacy Pines development; Legacy Pine's development agreement; and the 14600 Nowthen property. Debtor failed to disclose his interest in Everpine Homes as well as the bank account associated with it. At trial, he admitted to using this bank account for business and personal use both before and after his bankruptcy.

Debtor indicated on his petition that he was unemployed. However, testimony at trial showed that he continued to work on multiple development projects, had access to business bank accounts, and access to funding from Mr. Machacek. Debtor also had an interest in Platinum Land

that he failed to disclose on his schedules. He used Platinum land on multiple development projects but failed to disclose any interest in this business on his bankruptcy schedules.

Debtor was aware that these statements were false because he continued to engage in business activities with the companies and he used the bank account throughout his bankruptcy up to and including the trial. The above false statements are material because they dealt with assets that belonged to the bankruptcy estate, assets which the trustee could have liquidated and then distributed to creditors. As previously noted, the parties agree that Plaintiff had no knowledge of the fraud prior to the bankruptcy discharge. Therefore, because Debtor's discharge would have been denied under § 727(a)(4)(a) had the above facts been known at the time of his discharge, revocation is appropriate under § 727(d)(1).

### B. 11 U.S.C. § 727(a)(2)

Section 727(a)(2) of the Bankruptcy Code governs the denial of a discharge if a debtor fails to turnover or conceals property of the estate. The Court may deny a debtor's discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed…property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A)

To prevail on a § 727(a)(2)(A) claim, the Trustee "must prove that the debtor's actions took place within twelve months prior to filing; that the debtor took the actions with the intent to hinder, delay or defraud creditors; and that the actions complained of in fact consisted of transferring or concealing property." Georgen-Running v. Grimlie (In re Grimlie), 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010). A presumption of fraud arises when a debtor has transferred valuable property without payment. Id. at 716; see also McDermott v. Crabtree (In re Crabtree), 554 B.R.

9

174, 193 (Bankr. D. Minn. 2016) (overturned on other grounds).  Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors.  In re Grimlie, 439 B.R. at 716; see also Crabtree, 554 B.R. at 193.

It is not necessary to prove fraudulent intent for the plaintiff to succeed on the § 727(a)(2) claim.  Fox v. Schmit (In re Schmit), 71 B.R. 587, 591 (Bankr. D. Minn. 1987).  "A finding that the debtor had actual intent to hinder or delay creditors is sufficient." Id.  Minnesota's codification of the common law badges of fraud may be used to determine if the defendant acted with fraudulent intent.  In re Schnoor, 510 B.R. 868, 872 (Bankr. D. Minn. 2014).  These are: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.  In re Addison, 540 F.3d 805, 813-14 (8th Cir. 2008); Minn. Stat. § 513.44(b).

Here, Debtor both concealed and transferred property with the requisite intent to hinder, delay, or defraud.  Ms. Garaghty credibly testified that prior to filing for bankruptcy, Debtor fraudulently transferred his interest in Everpine Land with the express intent of keeping it out of the bankruptcy estate.  Although, Debtor testified to the contrary, the Court, as the trier of fact, is

the assessor of the witness's credibility, and the adequacy of the evidence. Johnson v. Fors (In re Fors), 259 B.R. 131, 140 (B.A.P. 8th Cir. 2001). "The assessment of a witness's credibility may draw on an evaluation and the content of testimony, changes in the witness's demeanor, and the Court's experience, along with other considerations." In re Thiel, 579 B.R. 527, 533–34 (Bankr. D. Minn.), aff'd, 587 B.R. 92 (B.A.P. 8th Cir. 2018) (citation omitted). The Court finds that Ms. Garaghty's testimony was credible. There is no doubt that Debtor fraudulently transferred his interest to Ms. Garaghty. Whether it was the date on the document or the date that Debtor, Ms. Garaghty and Mr. Machacek met makes no difference. Even if it were transferred on August 1, the transfer is within one year of Debtor's bankruptcy filing which occurred on April 23, 2020. The transfer was gratuitous because the transfer was made to his then-fiancé and no consideration was provided. Debtor was insolvent at the time of the transfer. He also retained possession and control of the property. He continued to work on properties owned by the allegedly-transferred entities, and he purchased more properties after the transfer. Combined with Ms. Garaghty's credible testimony that Debtor transferred the property with the express extent of concealing it from the bankruptcy estate, it is appropriate to revoke debtor's discharge pursuant to Section 727(a)(2)(A).

Therefore, Debtor's discharge is revoked under § 727(a)(2).

## II.     11 U.S.C. § 727(d)(2)

Plaintiff also seeks revocation of Debtor's discharge under § 727(d)(2).

> (d) On request of . . . the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
> . . .
> (2) the debtor acquired property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee

11 U.S.C. § 727(d)(2). The party requesting a revocation of discharge "must prove each element by a preponderance of the evidence." Doeling v. Coating Specialties, LLC (In re Toftness), 439 B.R. 499, 501 (B.A.P. 8th Cir. 2010). The first element is "to determine if the debtor acquired property of the estate." Id. at 503. The second element is "whether the debtor knowingly and fraudulently failed to deliver property of the estate to the trustee." Id. With respect to the second element:

> Fraudulent intent may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct. A debtor's intent may be inferred from all the surrounding circumstances where the debtor's pattern of conduct supports a finding of fraudulent intent. The focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor.

Fokkena v. Klages (In re Klages), 381 B.R. 550, 554 (B.A.P. 8th Cir. 2008). "The debtor's duty of disclosure requires updating schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions." Hecker v. Seaver (In re Hecker), 703 F.3d 1112, 1115 (8th Cir. 2013)

Debtor acquired property of the estate after the date of the bankruptcy petition. First, Debtor acquired funds from Mr. Machacek. Through the undisclosed Everpine Homes bank account, Debtor received regular checks ranging from $1,000 to $15,000.00 from Alliant Finance. [Ex. 98-29.] These funds were used for the development of the Legacy Pines project as well as in the form of cash paid directly to Debtor. Mr. Davidscredibly testified that it "was a fairly regular routine" for Debtor to get cash from Mr. Machacek. [Tr. II 9.] Mr. Davids credibly testified that on one occasion, late in the summer of 2020 "after his bankruptcy settled, [Debtor] came back with $100,000.00." Debtor informed Mr. Davids that this cash was from Mr. Machacek, and that

12

it was "a kickback after he filed for his bankruptcy." [Tr. II 10.]  No cash transactions were disclosed to the Trustee or shown on Debtor's schedules.

Debtor also moved money back and forth from the Everpine Homes account and the Penelope Properties account in order for it "not to be traceable." [Tr. II 16.] The Penelope account, which was created after Debtor's bankruptcy filing, was never disclosed.

Finally, Debtor purchased multiple properties after filing for bankruptcy; he failed to disclose any of them.  On May 13, 2020, a few weeks after he filed his bankruptcy petition, Platinum Land purchased the Long Lake Property. It also entered into an addendum to the purchase agreement for the 14600 Nowthen Property after the bankruptcy petition was filed. Neither agreement, each of which created certain property rights that belonged to the bankruptcy estate, were ever disclosed to the chapter 7 Trustee.

As a result, Debtor's discharge is revoked under § 727(d)(2).

## CONCLUSION

The United States Trustee has established her claims under 11 U.S.C. § 727(d)(1) and 727(d)(2).

Accordingly,

**IT IS ORDERED** that Debtor's discharge is revoked under 11 U.S.C. § 727(d)(1)-(2)

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: *December 5, 2022*                    */e/ Michael E. Ridgway*
                                             Michael E. Ridgway
                                             United States Bankruptcy Judge

13